Our next case is United States v. Goode, Mr. Sempervoit. I messed it up. That's okay, your honor. You're not the first. Good morning, your honor. Steve Van Stemport for Mr. Goode. I think I've reserved five minutes for rebuttal, if that's okay. So we have a couple issues here, but I think, first of all, I want to talk about the appellate waiver. The government's either forfeiture or waiver of the ability to rely on the appellate waiver that Mr. Goode signed. I think the Kemp case is pretty close to what we have here, except this case is actually kind of even more exaggerated in terms of what the waiver or the forfeiture is. So here what happened is that Mr. Goode, we filed the opening brief, and then the government, on the day that its response brief was due, filed a motion that was in two parts. It was partially on the motion to dismiss on the basis of the appeal waiver that was directed at the constitutional argument that Mr. Goode raised. And then the second part of that motion was a motion for summary affirmance, and that was on the ACCA argument. And essentially the summary affirmance said, look, we want to get rid of this thing on the merits, the ACCA argument. This court, of course, granted the motion to dismiss on the constitutional argument and deferred on the summary affirmance, set it for full briefing. And then what the government did is said, okay, now that we have to brief it, actually let's go ahead and try to move to dismiss on the appeal waiver with respect to the ACC argument as well. And I think the Kemp case, I think, is pretty clear. Look, if the government has a chance, right, and files a motion on some grounds and then intentionally decides not to file a motion on other grounds, those other grounds are forfeited. And here I think actually here's a pretty good case for waiver because the government specifically said we want to enforce the appeal waiver with respect to half the appeal and then didn't enforce it with respect to the other half. And so I think we're in waiver territory. It's clearly forfeiture, but I think it actually looks like waiver. Again, I would direct the honors to the Kemp case, which again had to do with a timeliness bar. So they're in Kemp. What the government did is they filed a motion to dismiss based on the appeal waiver and then later on said, okay, actually let's try to dismiss this thing as untimely. This court ruled they forfeited the argument. And I think the same analysis applies here. So that's with respect to the appeal waiver, that part. And then the second part, of course, is the merits. And, again, this is plain error, plain error review on the ACCA argument. You recognize it's plain error? Yeah, absolutely. The standard review is plain error, yes. How do you satisfy? Pardon me? How do you satisfy plain error? It is an uphill climb, Judge. I agree. But I think we can get here this way. Because I think, you know, one of the interesting things about the ACCA, of course, is that you end up with kind of strange outcomes. And it's interesting the ‑‑ What about with plain error we may not even have to get to the ACCA. There's the substantial rights prong of plain error. And wasn't your client subject to 360 months regardless? Isn't there another count where he got 360 months? Yep. So how are his substantial rights affected by this? Even if we assume this is error, and even if, you know, we take a drastic step of assuming it was plain, he would still be subject to 360 months in prison, wouldn't he? Well, so, yes, he would be sentenced to 360 months on count one, but not on count five. Right. They were concurrent, right? That's correct. Okay. Right. And there's the Foster case, but I think Foster is pre-Pepper, right? So I think we can distinguish it on those grounds. And I do think, you know ‑‑ Well, Pepper is about if the sentence is being vacated on one count, then the court can reconsider the whole package. But nothing would be vacated in this circumstance. I don't see how Pepper changes anything for you. Here we're talking about before we even ‑‑ here we're talking about should we vacate, right? We're pre that step in the process. Right. Yeah, well, that's ‑‑ I think that's true, Your Honor. And I think the question is if you ‑‑ if the court says, okay, let's assume there was error, let's assume it was plain, and then we get to did it make a difference. And clearly it made a difference on count five. Now, it didn't make a difference in terms of the total amount of time that he spends in prison as of right now because of the 360 months on count one. However, I think his ‑‑ and if we play it forward, right? And I think ‑‑ so I think this is actually an important point for defendants who have been sentenced of multiple counts because you never know what's going to happen in the future with respect to the sentence on the other count, right? There may be something that comes along the way and there's a retroactive effect that reduces that sentence for some reason, right? Then you'd be in a position if this court said, look, we don't think his substantial rights were, you know, challenged, were affected because of the concurrent counts as of right now, then what happens to them later on, right? Because then later on you're in a position where potentially they would have affected it based on what happens with count one, right? And again, so I ‑‑ and I recognize this is all kind of theoretical in some respects, but I think it's an important point for purposes of this court's jurisprudence to not lock into a rule where if there is concurrent counts, necessarily the sentence, if you are sentenced above the statutory maximum on another count that's concurrent, necessarily there's no substantial interest. Because I think there is a substantial interest in being sentenced correctly on each specific count because, again, you never know what's going to come down the road. I guess that would be our position on that piece. On the error itself, and again, I recognize this is an uphill climb, you know, I do want to ‑‑ Is that what you just said? You recognize? I do realize it's an uphill climb on the ‑‑ there's a hurdle here. Previously your earlier statement is the client has 360 months, and he's going to have 360 months no matter how we rule on this case. Is that right? On count one, yeah, but not on count five. But he's still going to have 360 months. Yes. And so there's no ‑‑ what you're now is trying to, just in case in the future, some miracle or something happened for the Supreme Court that says the other one is bad, but you won't be stuck with five or something like that you're trying to say. Well, there may be legislative acts down the road from Congress, right? I mean, sometimes what happens is they pass a statute that retroactively knocks down the sentence for some individuals in some circumstances, right? Whether that happens now, I have no idea. All I'm saying is there is an interest in a defendant of having each sentence be appropriately within statutory maximum, right? I guess that's the only point I want to make with respect to the substantial interest affected, right? Because, yes, he's ‑‑ you know, in terms of the amount of days he spends in prison, yeah, count one is out there, right? But on count five, you know, he has an interest in being sentenced correctly on count five as well. Do you recognize our Ellis case as unless it's going to reduce the overall sentence, it hasn't affected substantial rights? So, again, and I can't remember if Ellis is before Pepper or not. But, again, and I recognize that, you know, there are issues, right, in terms of practicalities, in terms of the ‑‑ whether somebody's substantial interests are affected. But, again, I think a substantial interest on a count‑by‑count basis is important for the particular defendant in this particular circumstance. But what Judge Rushing is saying is we do have cases that are on point on this and basically says that there is no substantial right interest where you have the current sentence like this and one is out and you still have the same sentence. So for us to do something different than that, we'd have to have an en banc or the Supreme Court would have to do something. But we cannot, this panel cannot change that precedent. Correct, correct. And obviously, Your Honors, you are bound by the precedent and to the extent that it applies here, it applies here. So you understand you lose on that issue here, but you are asking for, I guess, what are you asking for? Well, Your Honor, I think what I would do is I would go back to the first argument, right? I think the first argument in terms of the government's waiver of the appeal waiver, I think that is clearly, I think that's pretty open and shut in our favor. Well, they waived the appeal and so you got the merits here. Exactly. You still lose. You lose. So I mean, what difference does it make whether or not they waived it or not if the end result is the same? Well, I think the principle that the government, if they file a motion for summary affirmance, right, and they intentionally say, look, we're not going to worry about the appeal waiver for the purpose of this argument, I think that's an important principle for this Court to recognize, right, regardless of what happens on the merits. I think that laying down that rule, because, you know, when I saw the motion come in for summary affirmance, I thought. So basically you want an opinion that will express that, but it's not going to help your client. You want us to say there's no, what do you call it, a summary affirmance, but you lose anyway. Your Honor, I can't acknowledge that I'm, you know, I'm working with what I have, Your Honor. You want to say they forfeited it? Yeah, absolutely. That's what you want us to say. But even with that, you still lose. As I indicated earlier, Your Honor, I realize that. It's just a question of which prong you lose on. In terms of the plain error? In terms of the plain error. There are challenges at multiple prongs, yes, Your Honor. I will concede that it's a difficult argument. If we would think maybe there was an error, we assume there's an error. But as complicated as it could be, it doesn't jump off the page, and it's not plain error. So you lose right there. And, you know, I recognize it is a complicated issue. And it is interesting, you know, if we look at the North Carolina statute that he was convicted under, it's one big paragraph. It's in our brief. But actually felony murder under North Carolina, under that statute, felony murder is a first-degree murder under that statute. And felony murder is not a crime of violence under this court's analysis in Jackson. And so we have a really weird situation here where it looks like by pleading guilty to second-degree murder, instead of being convicted of first-degree murder, he's actually convicted of a crime of violence, whereas if he had been convicted of first-degree murder, he wouldn't be. And so you do have this very odd situation where first-degree murder under this particular North Carolina statute is not a crime of violence, whereas second-degree murder is. And, again, Your Honor, I recognize that this court's precedent is what it is, but that is a very odd situation. But to answer Judge Whitten's question, I think, yes, we would ask for an opinion or precedent here establishing that when the government moves for summary affirmance and does not choose to move to dismiss on the appeal waiver, then it has forfeited or waived the appeal waiver and can't resurrect it later on when a summary affirmance motion is denied. Unless there are further questions, I'm happy to cede my time. Thank you very much.  Appreciate you. Ms. Englander? Good morning, Your Honors, and may it please the Court, Kate Englander on behalf of the United States. This is a case where the standard of review, plain error, should be dispositive. Even if the defendant could show that North Carolina's second-degree murder is not a crime of violence, and we absolutely contest that, we believe it is a crime of violence, but even if they could show that it's not, the defendant can't show that that is a clear and obvious conclusion under the law as it stands now, nor can he demonstrate that it affected his substantial rights where it didn't impact the guidelines range calculation of the district court, nor did it impact his overall sentence from the district court because he was sentenced to a concurrent sentence of equal length. And I'd like to just jump in and start with that last substantial rights problem because I do think it's decisive here. Again, it did not—the designation of the defendant as an armed group— You mean the one in which we've got cases on that basically said that when you have these concurrent sentences, you lose those substantial rights? That's right, Your Honor. You don't say something different in those cases? I don't have anything different to say. I would just— I'm not trying to cut you short, but, I mean, I don't think you need to re-litigate something that— You probably could just quote us from those cases. They're probably pretty good arguments, I think, to me. I would agree with that, Your Honor. I think Foster and Ellis are conclusive here. So if the court has no questions on substantial rights, I'm happy to move on to plainness. You know, I would just point out that there's nothing plain and obvious about whether— Can I just—you're moving—you've started with the merits, so I'm assuming that you don't have anything to say about the waiver forfeiture of the plea agreement. Your Honor, I'm happy to make a few points on it. I do think the merits— It's fine if you don't. The merits here are straightforward, so I'm happy to address it on the merits. I think the government filed its motion, recognizing that it was out of time, filed a second motion to dismiss because there was a significant change in the law that impacted whether or not defendant's claim fell within the scope of his appeal waiver. The Lubkin decision was, you know, I think a significant clarification that the government was frankly not anticipating when it filed its first motion. I usually hear that argument on the other side. I don't think that case—it doesn't seem like to me it fits in there. And even if so, there wasn't a seat change. It wasn't a seat change in the instance that it was clear that what you did was what you did. Because obviously the government did it in the Lupton case, too. I mean, so, you know, I mean, it was just something you probably should have done. You probably should have included it in with the motion to dismiss. But then to ask for some of the affirmance of it— I mean, we do this with defendants all the time in terms of wavering on these kind of cases here. But I think if we write it or go in your direction, it certainly will change the law in terms of how defendants approach this and what they have forfeited and what they waive on cases because what applies here applies there. So if you think that's a case that really did do that, there are a lot of other cases out there that are sort of similar to what it did. And yet this court, it was not so clear that was the direction to go because, I mean, most people look at second-degree murder. You probably say, well, of course that's common sense. But it's not a common sense. Now it's a categorical one. But, you know, so it just seems like any prosecutor, when the first thing he says, oh, no, this is waiving, you know, because it's just, you know, not there. But whoever made the decision probably was not one that you usually make there, I would probably say. I would dare say you probably have done that in other cases. Sure, Your Honor. I'll just make a couple of quick points here, and then I'll move on. I think, frankly, we do think it is forfeiture, not waiver. And if it's forfeiture, it's within the court's discretion to excuse the late filing. That's all we're pointing out. You know, I do think that this case differs a bit from Kemp and Oliver in the sense that Kemp was a case where the government had completed full merits briefing and had not sort of missed the issue that the case was not timely filed and then later filed a motion to dismiss. It was, you know, apparent. What the court said there is basically you wasted our time by asking us to review the full merits briefing before you then filed this procedural motion. Here we did, you know, we had an initial motion. We had not fully briefed the merits when we filed their second motion to dismiss. I recognize that it's not a major distinction, but it is a distinction. And, you know, I don't think that there's any doubt that the government, had Lubkin been decided before our response was due, would have moved to dismiss on that basis. This court already found that the plea in this case was knowing and voluntary when it dismissed the other part of this appeal. And this claim is, I believe, within the scope of this court's decision in Lubkin. That's really all I want to say about it. I do think this case is straightforward on the merits. I'm happy to further address it on that basis. And I think especially looking to plainness in this case, again, the parties have spilled a lot of ink on the various cases in this area, on the categorical approach, you know, arguing that the cases point in different directions, Castleman, Rumley, Manley, all of these cases. I think that alone precludes a finding that this was not, that it's plainly a crime of violence. This court itself has three times held that it is a crime of violence, all in unpublished cases. We recognize that. I recognize that those cases predated the Borden decision of the Supreme Court that sort of changed a little bit the understanding of the mens rea requirements. But they post-date Leocal. So it was definitely recognized at the time that those cases were decided that there is a mens rea component to the crime of violence analysis that needs to be considered when you're evaluating whether a state court crime is categorically a crime of violence. And I think just if we take a step back, you know, I recognize that the analysis can be complicated, but I think both this court and the Supreme Court and Delegati have recognized that murder is the prototypical crime of violence. I think Irby described it as the quintessential crime of violence. So I think just taking a step back, again, we're talking about second-degree murder. How could it be plain and obvious unless there is a direct case on point? How could it be clear and obvious that that's not a crime of violence? I don't think the defendant has met their burden there. And then really turning to the actual merits of it, the error prong, I think that the defendant, you know, Borden left open the question of whether a mens rea of extreme recklessness, which falls somewhere between recklessness and knowledge, is sufficient for a crime of violence. It explicitly left that question open in footnote 4, I believe, in the Borden decision. But that's not an open question in this circuit. So the Manley decision said extreme recklessness, and they're analyzing a Virginia version of it, but it's substantively identical to North Carolina's definition of malice. And they said that that is sufficient for a crime of violence. And, Your Honors, I do want to just kind of briefly address the Parley case because I think that that is, you know, that's the overdose that resulted in death that I think is really what defendant's argument on the error prong hinges on. And I do think that there are some points to make about that. So, first of all, that is a court of appeals case in North Carolina that was decided on sufficiency of the evidence, so the evidence is interpreted in the light that's most favorable to the state in that case. I think it's important to recognize the court did not lower the mens rea standard in that case. It said the prosecution had to prove malice. And we can't say based on these facts that a reasonable jury couldn't have found that met here. It's a very limited recitation of the facts, and there are some indications, even in that limited recitation, of how the jury could have come to that conclusion that there was malice there. The defendant in that case, you know, indicated that the pill that he was distributing was very dangerous, that he liked to take it because it messed him up. And we also know that the victims in that case were between the ages of 13 and 16, which may have played into the jury's understanding of how inherently dangerous that action was. And, Your Honors, I think if there are no further questions, I will reserve the rest of my time, but I'm happy to answer anything about the merits. Thank you very much. Thank you. We appreciate your work. Mr. Templer? Thank you. Just a very short rebuttal, Your Honor. In terms of the substantial rights prong, LS looks like it's a 2003 case. So, again, our position would be that that, along with Foster, predates Pepper, again, which instructs that you look at the sentence as a whole. I recognize that there are concurrent counts here. I will also point out, though, that the government at sentencing the first time around recommended 300 months, which is lower than the 360 that he actually received. And so if the case, if there was error, if it was sent back, there is a possibility that the court would sentence, along, you know, consistent with the government's recommendations, which would be lower. And, again, Your Honors, you know, to the extent that this is resolved, that the plain error, the merits is resolved against us, I think that this is not the prong to do that on, for the reasons I mentioned earlier, right? I mean, because there may be consequences downstream from saying, look, right now your sentence is the same, it's the same thing, and let's just, you know, let's just kind of go with it. You'd rather us decide it on plainness that's not plain, because we've said in previous cases this is a crime of violence. Well, I think Manley is out there. Of course, we've said that Delegati changes the analysis. I think it's difficult to square the extreme recklessness analysis with Delegati. It's really difficult to say, to show how an act by omission, if it's just reckless, even if it's extremely reckless, how that could result in somebody using something as a conscious force against a conscious object of that force. So that's our position. To the extent that the case is decided, though, I would agree that it would be decided on the plainness prong rather than anywhere else. Unless there are further questions, Your Honors. Thank you very much, sir. And we recognize that you're court appointed, and I want to tell you how much I appreciate, we appreciate your work. We couldn't do ours without lawyers like you. Thank you, Your Honor. We'll come down to Greek Council and then take up the final case.
judges: Robert B. King, James Andrew Wynn, Allison J. Rushing